THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MAYRIM GONZÁLEZ-ROLDAN, et al.,

    Plaintiffs,

    v.

MUNICIPALITY OF SAN JUAN, et al.,

    Defendants.

Civil No. 14-1039 (ADC)

## OPINION AND ORDER

The plaintiffs in this political-discrimination employment action are suing the Legislature of the Municipality of San Juan and, in his official capacity, the Legislature's President (together, "defendants"[1]) for relief pursuant to 42 U.S.C. § 1983 and Puerto Rico law. **ECF No. 60**, at ¶¶ 2–3, 66–78. On April 10, 2017, plaintiffs moved the Court to compel defendants to provide specific performance of the oral settlement agreement that the parties had reached during a January 19, 2017, settlement conference before the Honorable Bruce J. McGiverin.[2] **ECF No. 134**. The Court ordered defendants to respond to the motion, instructing them to make "specific reference to any difference in the law that applies to the two [of them]." **ECF No. 140**, at 4. When defendants did not timely comply with that Order, plaintiffs renewed their motion to

---

[1] The parties agree that these defendants are the only ones remaining. **ECF Nos. 133** at 1 n.1; **134**, ¶ 1.
[2] The parties appear to agree that they concluded an oral settlement agreement. See **ECF No. 144**, at 9 (defendants stating "[t]here is no dispute that an offer was made to plaintiffs in this case and that they accepted the same."). But it is not pellucid whether the parties agree what the terms of that agreement were. Magistrate Judge McGiverin's minute entry from the settlement conference states, in relevant part: "The parties reached a confidential agreement in principle, the terms of which were disclosed to [me]." **ECF No. 126**.

compel. **ECF No. 141**. Later that same day, defendants opposed the motion, **ECF No. 144**, and the Court agreed to deem the opposition timely. **ECF Nos. 145**, **160**. Plaintiffs then replied, with leave of Court, to the opposition. **ECF No. 151**. The Court now finds that plaintiffs have failed to show that the oral agreement binds defendants.[3] Due to the importance of the issue, the Court will allow plaintiffs to renew their motion. But, in the meantime, the parties must schedule and prepare for trial.

      The Court will begin by showing why the parties' submissions fail to establish whether their oral settlement agreement binds defendants. Plaintiffs, in their filings, lean heavily on the fact that oral settlement agreements can be enforceable. **ECF No. 134**, at ¶¶ 11–13 (citing *Olmo* v. *State Ins. Fund of P.R.*, 206 F. Supp. 2d 226 (D.P.R. 2002) (García-Gregory, J.)). But the mere fact that such agreements can be enforceable does not mean that this one is. And, plaintiffs do not take the necessary next step of explaining why their agreement is enforceable. Instead, they simply assert that their agreement complies with the elements under Puerto Rico law of "a valid, binding, and enforceable agreement," as if the matters of enforceability and which law applies are so clear they require neither discussion, nor development. See **ECF No. 134**, at ¶ 9; but see *Enos* v. *Union Store, Inc.*, 732 F.3d 45, 48 (1st Cir. 2013) (finding that where "the underlying action is brought pursuant to a federal statute, whether a settlement agreement is enforceable is a question of federal law."); *Negrón Gaztambide* v. *Hernández Torres*, 145 F.3d 410, 415 (1st Cir. 1998)

---

[3] "It is permissible but often unwise for counsel to inform the court a case is settled when they have no more than an oral settlement agreement." *White* v. *Fessenden Sch.*, 358 Fed. Appx. 208, 211 (1st Cir. 2009).

(per curiam) (finding that when an "oral agreement" purports "to settle a claim pursuant to a federal statute on the eve of trial, . . . federal interests are generally sufficient to make federal law the guidepost by which a court should decide whether the parties have entered into an enforceable settlement of that claim."). Although plaintiffs acknowledge that Puerto Rico law imposes conditions precedent on the enforceability of certain types of municipal agreements, they quickly find—without citing any controlling legal precedent—that those conditions do not stand in the way of enforcing this agreement. See, e.g., **ECF No. 151**, at 6–7. In the end, plaintiffs do not so much establish, as assume, that the oral agreement at issue here is enforceable.

Meanwhile, defendants, in their filings, assert that "the approval of any settlement agreement that would impose a payment for the Municipality in excess of $25,000.00," such as (presumably) the one at issue here, requires "the express affirmative vote of the majority of all members that compose the municipal legislature." **ECF No. 144**, at 5. Defendants indicate that the Court must infer the rule from two provisions of the Autonomous Municipalities Act of Puerto Rico of 1991, P.R. Laws Ann. tit. 21, § 4001 *et seq*. In particular, defendants note that P.R. Laws Ann. tit. 21, § 4109(e), provides, in relevant part, that the "mayor" of a local municipality "shall submit to the consideration of the municipal legislature any transaction offer that entails any type of financial disbursement over twenty five thousand dollars ($25,000), prior to submitting said transaction offer to the consideration of [a] juridical forum." **ECF No. 144**, at 6. Defendants then note that P.R. Laws Ann. tit. 21, § 4207(c), provides that "approval of any ordinance and resolution shall require the affirmative vote of the majority of all the members

that compose the legislature, unless it is otherwise provided by this subtitle or any other act." **ECF No. 144**, at 5.

Defendants then assume (as well as conclude) that "[i]f the mayor lacks the capacity by herself to orally approve a settlement transaction that requires a financial disbursement over $25,000.00, the president of the municipal legislature likewise lacks such power." *Id.*, at 6. The problem with that logic is that the president of the legislature is not the only defendant left in this action; the legislature is also a defendant.[4] See **ECF No. 133**, at 1 n.1. And, the same attorney represents both the legislature, see **ECF No. 33**, and its president, see **ECF No. 6**. Moreover, by statute, the legislature has the power to "[p]rovide, by ordinances or resolutions, what is needed to implement the powers conferred on the municipality with regard to . . . the granting of agreements, in the measure they bind the municipality financially and legally." P.R. Laws Ann. tit. 21, § 4205(i). It is thus concerning when defense counsel resorts to logic, instead of ordinances, resolutions, or statutes, to argue that only a majority of the legislature can grant a settlement agreement. After all, pursuant to Section 4205(i) above, the legislature may have empowered its president, or another official, or its legal director, or even its outside counsel to enter into an agreement that can "bind the municipality financially and legally."

---

[4] Even more concerning is the fact that counsel's logic assumes he is still representing the president of the legislature in that official's personal capacity, which he is not. See **ECF No. 105**, at 27 (dismissing the action against the president of the legislature in his personal capacity); see also **ECF No. 133**, at 1 n.1 (acknowledging that the president of the legislature is now only being sued only in his official capacity). "[A] suit against a public official in his or her official capacity is, in so far as it is relevant here, a suit against the underlying public entity." *Negrón Gaztambide* v. *Hernández Torres*, 145 F.3d 410, 411 n.1 (1st Cir. 1998) (per curiam). Thus, insofar as that client authorized him to settle this case, the client was either the Legislature or the Municipality itself.

The Court also questions defendants' unusual assumption that the rules that apply to the confidential settlement of legal claims are the same ones that apply to San Juan's enactment of general legislation or its commercial dealings as a purchaser of goods and services. Defendants, themselves, must have questioned that assumption upon arguing to the Court that the Mayor can unconditionally veto a settlement agreement after the legislature has passed it (just like she can veto a bill), see **ECF No. 144**, at 6, or that a confidential settlement remains invalid until it has been made available to the public by filing it with the Office of the Comptroller (just like a municipal contract for the purchase of goods must be), see *id.*, at 10.[5]

Moreover, defendants' treatment of the settlement agreement—as no different than a bill that remains inoperative until signed into law by the Mayor—appears to directly contradict the reasoning of the First Circuit Court of Appeals in *Garayalde-Rijos* v. *Municipality of Carolina*, 799 F.3d 45 (1st Cir. 2015), where the Court held that the Municipality of Carolina was obligated to comply with the Rule 68 Offer of Judgment—effectively, a settlement offer—that its lawyer had extended to the plaintiffs in that employment-discrimination action. This Court surmises that if that settlement offer had been invalid until enacted as an ordinance by the Carolina Legislature and signed into law by its Mayor, the outcome of that case would have been very different. As a matter of fact, defendants' sweeping position appears to be that a municipality

---

[5] Indeed, in one of the government-purchasing cases that defendants provided to the Court, *Las Marías Reference Lab. Corp.* v. *Municipality of San Juan*, 159 D.P.R. 868 (P.R. 2003), the Puerto Rico Supreme Court held that the point of registering public contracts with the Comptroller's Office is to "achieve greater transparency in public administration while promoting stability, certainty, and credibility in municipal contracting." **ECF No. 150-1**, at 7; see also P.R. Laws Ann. tit. 32, § 1781 (providing a right to inspect "any" public document).

in Puerto Rico can never extend a Rule 68 Offer of Judgment or settle a case more generally unless and until the municipality's legislature has passed the agreement as an ordinance and had the mayor sign the agreement into law, with any modification of the agreement (pursuant to, say, to settlement negotiations before a Magistrate Judge) having to pass through the exact same procedure before being valid. If the Mayor can then unconditionally veto the agreement instead of signing it, the Court has difficulty seeing how any municipality can ever claim that its settlement offers can be relied on. The Court, thus, has serious doubts about the correctness of defendants' position.

Defendants' related position that any settlement agreement it enters must comply with the contracting rules in the Autonomous Municipalities Act seems to conflict with the language of that statute's primary section on contracts, which addresses the purchasing of "professional, technical, and advisory services." See P.R. Ann. Laws tit. 21, § 4366. One need only read the statute's provisions to see that they make very little sense in the context of settling employment-discrimination claims. For example, Section 4366 states that a municipality "shall not grant any contract in which any of . . . [its] officers, or employees have, directly or indirectly, any pecuniary interest, unless authorized by the Governor of Puerto Rico, upon the recommendation of the Secretary of Justice and of the Commissioner [of Municipal Affairs.]" Because an employment-discrimination claim will often involve officers and employees of the municipality on both sides of the case, the Court doubts that each settlement agreement must first pass through the Office of the Governor of Puerto Rico. For example, it appears from the record of this Court that, when

the Municipality of Carolina submitted its Rule 68 Offer of Judgment to the plaintiff in *Garayalde-Rijos*, she was an active municipal employee. See Proposed Pretrial Order at 18, *Garayalde-Rijos* v. *Municipality of Carolina*, No. 11-CV-1947 (D.P.R. Nov. 10, 2014) (Besosa, J.), **ECF No. 102**. The Court again surmises that if the Rule 68 Offer of Judgment in that case was invalid unless and until the Governor of Puerto Rico had authorized it (and it had been passed by the legislature and signed into law by the mayor), the Court of Appeals' decision would likely have come out the other way. Accordingly, this Court will not simply assume, as defendants do, that the rules that apply to legislation and municipal commercial contracts also apply to settlement offers.

Without knowing more about the ordinances and resolutions that the San Juan Legislature has enacted with regard to the granting of agreements that bind the municipality financially and legally, see, e.g., P.R. Laws Ann. tit. 21, § 4205(i), the Court cannot decide whether the settlement agreement here is enforceable. The Court thinks "it elementary that a party who seeks to enforce a settlement agreement against a [municipality] in federal court must demonstrate that the agent of the [city] who allegedly entered into the agreement had the power to bind the [city]." *Negrón Gaztambide*, 145 F.3d at 416. The Court is aware that, during the settlement conference presided over by Magistrate Judge McGiverin, defense counsel asked to consult with his clients by phone to receive authorization to enter into the oral agreement. See also **ECF No. 151**, at 3. Ultimately, counsel may have to disclose the identity of the person(s) he received the authorization from. But, at present, the burden remains on plaintiffs to show that the oral agreement is enforceable.

It may be the normal practice of the San Juan Legislature to require a majority of that body to approve of a judicial settlement by formal vote, but it may be the case that the legislature has also enacted an ordinance or resolution delegating the authority to extend a settlement offer to specific officials, see P.R. Laws Ann. tit. 21, § 4205(i), or (if no such ordinance or resolution exists) that the civil-law principles that generally govern municipal obligations independently bestow the authority on specific officials, see *Plan de Bienestar de Salud* v. *Mayor of Cabo Rojo*, 114 D.P.R. 697, 699, 14 P.R. Offic. Trans. 896, 899–900 (P.R. 1983), or that some other source of law governs whether defense counsel had the authority to bind his clients to the settlement agreement. But the parties will not help the Court determine what the law actually is until they start providing enacted law and case law that sets forth the controlling rules. More so, defendants cite to P.R. Laws Ann. tit. 21, § 4109, which requires the municipal legislature to consider any transaction over $25,000 "prior to submitting said transaction offer to the consideration of the judicial forum." Whether compliance with this requisite can be assumed or is established remains paramount.

Accordingly, the Court will permit plaintiffs to submit a renewed motion to compel, which, to be successful, must establish that defendants are bound by the oral settlement agreement here. As noted above, this issue reduces to whether counsel had actual authority to bind defendants. See **ECF No. 144**, at 10 (defendants agreeing that the question "is whether a good faith settlement offer made by municipal officials, through their attorney to the Court, is

legally binding."). In the meantime, however, the parties must schedule and prepare for a trial on the merits of this action.

In sum, the Court hereby **DENIES** plaintiffs' motions to compel defendants to comply with the oral settlement agreement, see **ECF Nos. 134**, **141**, with leave to renew those motions within the next fourteen (14) days. The Court also **NOTES** the motion in compliance filed at **ECF No. 144**. If plaintiffs renew their motion to compel, defendants will have ten (10) days to respond. An evidentiary hearing on any renewed issue is set for **December 4, 2017 at 10:00 a.m.** The parties must also jointly submit any modifications to their proposed pre-trial order, **ECF No. 119**, within the next fifteen (15) days.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2017.

**S/AIDA M. DELGADO-COLÓN**
**Chief United States District Judge**